The next case on calendar is Nichols v. FDIC 17-35556. Each side will have 10 minutes. Good morning. Samir Arab for the Plaintiff Appellant Diana Nichols. There are three points I would like to make this morning. But before I make them, there is something I would like to draw the Court's attention to. At the heart of this case, it's a mortgage fraud case. Could you be a little closer to the microphone? Maybe it's a little hard to hear you. Yeah. I also have a bad throat this morning. Sorry. I hope you'll feel better soon. At the heart, this is a mortgage fraud case. Rendered more complex because the lender, Washington Mutual, is in receivership. But as I mentioned earlier, it's simple at heart. Nichols asserts that Walmart took advantage of her while they knew she was in emotional, financial, and physical distress. What does it matter in light of her subsequent ratification when she got the loan modification? Well, I'll address that right away. That doesn't matter. This matters in terms of just reminding the Court, this is the third argument FDIC makes in their brief, that you should find a firm on other grounds. However, she did not. It strikes me that the heart of the case is, and maybe it's not the heart, but that whatever Washington Mutual did or didn't or should or shouldn't have told her about her basically getting to live in a million-dollar house that she didn't and couldn't pay for all those years, whatever they did or didn't tell her to get her on the loan, she subsequently, when it was modified to give her a break, ratified the loan. And that means we don't have to look back and see whether everything about that contract was okay or whether it was rendered void by some sort of misconduct. You're right, Your Honor. That is the central issue in this case, and I'll address that right now. See, the pronouns are important here. Diana Nichols signed a loan modification agreement with Chase, which is the bank which the assets were sold to. And she didn't sign that loan and didn't apply for it. It was 2012. So this loan was with Chase for four years after the FDIC was sent into receivership. In fact, the same day, excuse me, WAMU was sent into receivership with the FDIC. The same day that WAMU went into receivership, the FDIC organized and facilitated the sale of the entire bank to Chase, and that's in the record. Now, in American contract law, and it hasn't been that long since I left law school, what I remember learning is that consideration has to flow both ways. Diana Nichols... Well, there's no problem of consideration, I don't think, because the consideration for her ratification was getting the modification. Absolutely. But there is a problem with privity, and there's a huge problem with privity. Chase isn't WAMU. Chase isn't a successor in interest to WAMU. Oh, aren't they? They are not. They are absolutely not. WAMU did not sign a loan modification agreement with Chase that they then sold on to, excuse me, WAMU did not sign a loan modification agreement or enter into a loan modification agreement with Nichols, because all the cases the FDIC referred to in their brief target that specific scenario. Now, in the event, Judge Clenfield, that happened as you think it happened, or as you suggest it happened, where Nichols had signed a loan modification agreement with WAMU, and consideration had gone both ways. She had given up her right to seek legal redress against WAMU in exchange for better terms, and then that loan subsequently was sold or conveyed to another party. That party would then have a right to assert the promise that Nichols made in that loan modification. That is not what happened here. WAMU went... So you're saying Chase didn't step into the shoes of Washington Mutual? Absolutely not. And assessing the case along those parameters would upend foundational principles, fundamental principles of American contract law. Now, the question is, what did WAMU give up in exchange for the promise that Nichols gave Chase to not sue? Nothing. That is the answer. WAMU gave nothing to Nichols. Chase modified the loan. They modified the payment terms. So there was consideration and privity between Chase and Nichols, but not between Nichols and WAMU. So my way of looking at this case so far has been to put this entire thing aside and figure out if your client could ever win this case, because they've been arguing that you can't win on the merits regardless. And once they did that in their answering brief and urged us to affirm on an alternate ground, you barely even responded in your reply brief. Why should we not agree with them that your client just loses on the merits? Right. First of all, I did respond to it, but you're correct to say... You talked about maybe a couple and only one element, and she has to win all the elements of all those claims. So you haven't shown us that she's going to win any of these claims. Yes, Your Honor. That is correct. First of all, I don't think you should affirm on other grounds for the simple reason that the district court did not even address it. That's totally true, because the district court did this other thing. But it was briefed in the district court, wasn't it? It was. And discovery was over, so any facts that needed to come out were already discovered. That is incorrect. Okay. So what facts have not been discovered? Approximately, and this is in the record, approximately two weeks before the discovery deadline, Diana Nichols, who's a pro se at this point, pro se litigant, asked the court for more time to conduct a deposition of Sean O'Connor, who was the agent who persuaded her to enter into this loan in the first place. He's the central figure in this case. She was having trouble getting his deposition done, in part because she's pro se and not familiar with the system. Now, the court declined to grant her that motion. So I would disagree with the assertion that, oh, everything is in place. I believe that, first of all, the court should have permitted her some more time, given her pro se status. But you didn't appeal that ruling? No, I did not appeal that ruling. But in terms of addressing your question. But, I mean, why is there any reason to think, if we agreed, even if we sent it back, discovery is over. So that deposition isn't getting taken. You didn't appeal that. We're still stuck with this issue, and you can't win on the facts that you have, as far as I can tell. I disagree. There are several individual claims. Well, the first point I made is that you don't need to affirm on other grounds. You reserve, jurisprudentially speaking, the right to do so. But there's no need to do so. In part because, for example, in the breach of contract claim, Nichols says there was a breach of contract. What term was breached? The negative amortization, at least in the practical effects of it. What do you mean? I mean, the contract said exactly what happened could happen. Right. Well, this is one of the reasons I think it should be remanded to district court so this record could be developed specifically. But how can the record be developed when discovery is over? Well, discovery should be reopened, and it should be remanded for trial. That is our position. Now, there are other, for example, the TILA claim. The TILA claim, she received the TILA disclosure documents the day of the closing. Now, there's case law that suggests that she should have received that earlier so she could have given that. And the purpose of TILA is to provide borrowers a reason. I thought they always gave everybody the papers on the day of the closing, and the people that signed the papers have a limited time to revoke. That is correct. But in this particular scenario, the terms of the contract that she was led to believe that were going to be there were not. But she knew that, and she had three days to revoke, right? Right. However, and again, this is back in the seal portion of the record that goes to her mental state at the time. And Washington law permits revocation of or rescission of contracts where there's not a meeting of the minds, when there is not an understanding of what the actual terms are. Now, at this particular juncture in her life, Diana Nichols was in emotional and financial complete turmoil. And that is in the seal part of the record, dealing with her daughter, and she wasn't in her right state of mind. That is in her deposition. I can't see why someone who signs a contract and is not known by the person they're incapable of making the decision to do what they're doing, why they have to treat them like an infant. I agree, they shouldn't be treated like an infant. We should hold everyone to a standard of being adults, especially when they're given the power to sign contracts. However, in this particular case, and Washington law provides for scenarios such as this one, there wasn't a meeting of the minds. She wasn't in the right state of mind to sign this contract in the first place. Did the party on the other side of the table know that? Well, they certainly elicited that information during her deposition, or are you talking about specifically at closing? At the time of the closing. Right. Did the bank have an understanding that she was in mental distress? Yes, because the agent for the bank, Sean O'Connor, was the one who led Diana Nichols by the hand, took advantage of the information he had about her, and led her to that closing table. Figuratively speaking. Now, Sean O'Connor was a lender agent, or an agent for Washington Mutual, and he was very aggressive with Diana Nichols. Diana Nichols was intended, and this is in the deposition in the record, intended to sell her home and live in a smaller one. She confided to Sean O'Connor, an agent of Washington Mutual, that I'm in this trouble, here's what happened to my daughter, here's what happened to my life. Sean O'Connor says, well, hold on a second, I want to buy a home for 1.6 million, or 1.7 million. Actually, why don't you come to us, I'll give you a loan, he gets his fee, and you can get a million dollars. Here's another thing that's part of the record, she didn't get a million dollars, she was $900,000 in debt because of what had happened in her life. She was months behind in payments. I thought she was $900,000 in debt because she could never afford a million dollar house in the first place, and she'd nevertheless gotten a loan so she could live in the house she couldn't afford, and it was all on credit. I don't think the record reflects that. I think, especially the sealed parts of the record, beginning in 2004, I believe, or before all of this happened, she was in a position where she had to pay for her daughter to receive special treatment because of what happened to her, with her family. And there were a lot of other problems going on. She was diagnosed with PTSD and couldn't work for months. And this is all in the record as well. So the laws don't lend money to troubled individuals? No, that is not what the law says. But when there is a significant issue regarding someone's mental capacity to enter into a loan, and the bank knows that, then there is a problem. Washington law provides for rescission and some form of relief in scenarios such as that. We've taken you over your time. I'll still give you a minute for rebuttal. Thank you. I appreciate that. Thank you. May I please the court. Duncan Stevens on behalf of the Federal Deposit Insurance Corporation as receiver for Washington Mutual Bank. The district court correctly granted summary judgment to the FDIC here because Ms. Nichols, when she modified the loan, when she entered into the modification agreement, she specifically reaffirmed the validity of the loan documents and specifically stated that they were binding on her. And as Judge Kleinfeld has alluded to, that speaks to the waiver of her claims against Washington Mutual and the ratification of those terms. And as Judge Kleinfeld has alluded to, the summary judgment record did not contain evidence sufficient to support any of Ms. Nichols' claims. Let me start with the modification issue. It's certainly true that JPMorgan Chase does not stand in the shoes of Washington Mutual here, but privity is not relevant. Privity is not a relevant question because waiver and ratification can be affected outside any contractual context. A letter, a letter with no consideration at all can constitute waiver. The Washington Supreme Court so held in a case called Panorama Residential v. Panorama Corp. at 640 P. 2nd, 1057, Washington Supreme Court in 1982. It said a waiver can be unilateral and without consideration. And it said the same for ratification in a case called McLeod v. Morris International, 120 P. 528. Appellant next contends that the ratification was void for a lack of new consideration. No new consideration was necessary. The consideration of the original contract was sufficient to support the ratification. So the fact that Washington Mutual and the FDIC didn't furnish Ms. Nichols any consideration at the time of the modification, because they weren't party to that agreement, has no bearing on whether there was a waiver or ratification. So on that issue, we don't believe that the privity issue is relevant at all. We believe that the fact that Ms. Nichols entered into that modification specifically affirming, and I'm going to quote the modification at page ER2-138, the loan documents are composed of valid binding agreements enforceable in accordance with their terms and are hereby reaffirmed. That is a complete defense and it negates her claims. Let me turn to her specific claims, an argument in the alternative that she cannot prevail on the merits of those claims. And I'll go through them one by one. Her breach of contract claim, well, she hasn't pointed to a breach of contract. The contracts between her and Washington Mutual were the note and the mortgage. And while counsel has pointed to negative amortization, there's no question that while we filed the negative amortization schedule in the note, you know, whether the negative amortization was a favorable term does not speak to the breach of contract issue. Her next claim is negligence, but she hasn't pointed to anyone who owed her a duty of care that is required for a negligence claim. Washington Mutual and Sean O'Connor, an employee of Washington Mutual, had an ordinary business relationship with her, and ordinary business relationships do not ordinarily give rise to a duty of care. Her TILA claim, TILA requires that the disclosure has been made before the loan is funded. The closing was held six days before the loan was funded. She had, she could have at the time decided not to enter into it. She had three days to decide to rescind. She decided to proceed anyway, and this was she acknowledged this at her deposition. She acknowledged, she decided to enter into this loan because she needed the cash to come out of it. And she understood the terms because the attorney at the closing explained all those terms to her. There was no dispute that she knew what was in this loan at the closing. There was some question about what was told to her before her, and we're not, I'm not here to say that Mr. O'Connor made all the proper disclosures, but all the proper disclosures were made at the closing, and there's simply nothing in the record that indicates otherwise. Her fourth claim is an unjust enrichment claim, but unjust enrichment cannot coexist with an express contract in Washington law as elsewhere. At any rate, there was no unjust enrichment of Washington Mutual. They loaned her the funds. They said they were going to loan her. And the last one is fraud. Now, fraud, fraud in the factum requires a knowing misrepresentation. And Ms. Nichols acknowledged that she had no evidence about whether Mr. O'Connor made a knowing misrepresentation or whether there was a representation that was inadvertent driven by lack of knowledge. But even if he had made a knowing misrepresentation, again, when she got to the closing, all the terms were explained to her, and she decided to proceed. So there can't have been any reliance on a misrepresentation by Mr. O'Connor, given that she knew what she was doing at the closing and decided to proceed. Wouldn't there be some lawyer she talked to, Gruber or something like that, that told her it's an adjustable rate mortgage? Yes. So that was Mr. Gruber was You may not be paying principal when the rate is low enough? Yeah. Mr. Gruber was the attorney for the closing, the attorney for, I believe, the title company. But he was the one at the closing who explained all the terms. And he acknowledged at his deposition that she was upset, and we're not disputing that. But he also testified that she, understanding those terms, indicated that she wanted to proceed because it was she believed this loan was going to be helpful to her going forward. So given all that, and her last two claims are unconscionability and duress. But those are defenses to the enforcement of a contract. They're not ordinarily claims in themselves. They're not ordinarily freestanding claims. So in this light, we don't believe that Ms. Nichols can prevail on her claims based on what's in the summary judgment record. So even if the defensive modification weren't available to the FDIC, we think affirmance of the judgment in favor of the FDIC would be proper. Why should this court reach out and address all of these claims that were not addressed by the district judge? This court can affirm on any evidence that's supported by the record. So our main argument is that the modification is sufficient grounds to support what the district court did. But in the event that this court doesn't choose to rely on the modification, we believe that the record as to each of these claims is quite clear, and that it's within this court's discretion to look to alternative grounds as long as they're supported by the record. We certainly wouldn't. We're not asking the court to draw factual conclusions that aren't within the record, but we think the record on these issues is quite clear. Is it basically just an efficiency argument, that there's no reason for a remand if we could finish all the issues here? Yeah. It's consistent with principles of judicial economy that this court has recognized that when there are other alternative grounds for affirmance that are presented by the record, it doesn't have to send the district court through the additional exercise of considering those grounds if the ultimate outcome is going to be clear. That's all I have, but I'm happy to answer further questions if the panel has. Thank you, counsel. We'll give you a minute for rebuttal. Thank you very much.  Thank you, Your Honor. Part of the story here is Diana Nichols is a pro se litigant, and during- I couldn't hear the words. Part of the story here is that Diana Nichols is a pro se litigant, and during her deposition, when asked, what do you want? She responded, I just want what's fair. I just want everything- I see my time isn't running. Yeah, I was just going to say that, too. Thank you for- Thank you. I just want what's fair. She didn't know specifically what specific claims to plead in order to preserve her rights. Now, in Washington, there is a provision of law that says if there is no meeting of the minds and there's not an understanding of what's going on at closing or when someone signs a contract, there's the burden on the plaintiff to show that that was the case. It could be either fraud or misrepresentation. Now, that case is- excuse me- Fire Protection District and 122 Washington 2nd at 390 Pacific 2nd specifically, if the court was going to affirm this case, it would have to be on the other grounds because there's just no legal basis for saying that someone can give up their legal right to sue for nothing, especially when we're talking about a million dollar loan. She gives up her right. She cannot give up her right to sue. Wait a minute. She didn't get a million. She didn't give up a million dollars. She received a million dollars. Exactly. But the point is that she gives up her right to contest the validity of that contract. Well, she's happy to keep the million dollars. She just- I can't tell exactly. Does she think she doesn't have to pay it back? That can't be. I don't understand. No. She doesn't think that. She's- again, and we're dealing with a problem with the pro se- the problem is the pro se litigant issue. And she- at any rate- I'm trying to figure out what a pro se litigant who was upset would not understand. Excuse me? I can't figure out what it was that she did not understand that matters. She thought it wasn't going to be a negatively amortizing loan. She thought that it was going to be- That Gruber fellow told her it was. Right. But that's the problem. When I discussed earlier regarding the meeting of the minds at the time of- at the time of closing, she didn't comprehend or appreciate the situation she was in because of the financial and emotional turmoil that WAMI knew about and took advantage of during closing. And that's the factual issue in this case. And that's the reason it ought to be remanded. I don't even know about taking advantage. I mean, she got the money even though she wasn't paying for it. Well- A negatively amortizing loan means she's really not paying for the money or what she's paying per month. That's incorrect. She was paying between three to- It's less than the interest. Yes. She was paying between three to five thousand dollars a month. And by the time she stopped paying in 2013, she had paid back half a million dollars and the loan was still a million dollars. Now that is a factual issue that they structured the contract in such a way where it says it's possible that this could be negatively amortizing. However, it was structured in such a way that there was no other way for it to be than negatively amortizing. And this is such a huge issue, policy-wise speaking, in Connecticut where she lives, that they banned these kinds of loans. For that reason, Your Honor, and Your Honors, we recommend that this case should be reversed and remanded to the district court because there is no legal basis for the loan modification argument as a waiver defense. At any rate, it was asserted too late and they knew about it even before the loan was- even before this case started. Okay, I'm going to cut you off because you're way over your time, but thank you both sides for the arguments and thank you for your pro bono representation. We really appreciate it. Thank you, Your Honor. We have one more case. Do you want to keep going or take a break? I'm fine if you want to keep going. Okay, let's keep going then. So the last case on calendar is Hine. I have to get the whole thing. So, Hine v. United States, 17-35953. Each side will have 15 minutes.
judges: Kleinfeld, Friedland, Pauleyiii